# EXHIBIT B

## SETTLEMENT AGREEMENT, ALTERNATIVE SETTLEMENT AGREEMENT AND FORM OF RELEASE TO BE USED UPON FULL SATISFACTION OF AGREEMENT

The parties to this Settlement Agreement (the "Agreement") are Ralph Picard ("Picard") and D. Stephen Parsons ("Parsons") (either of the foregoing persons may be referred to as a "Party" and collectively, the "Parties").

WHEREAS, Parsons and Picard entered into a real estate investment partnership known as Rantz Farm, LLC to invest in the development and sale of real property located in Delmar, Delaware (the "Project"). On or about September 19, 2009, Picard informed Parsons that he could no longer provide 50% of the funding for the development of the project, according to the Operating Agreement between the partners. On _____2010 Parsons filed a Complaint regarding the Picard default under the Rantz Farm, LLC Operating Agreement in the Superior Court of Sussex County, Delaware, C.A. No. N10C-10-309 (the "Superior Court Action");

WHEREAS, various disputes arose between the Parties regarding the nature and amount of the claims between them with regard to the Project; and

WHEREAS, the Parties have reached an accord through which they hereby resolve their differing views, subject to the terms and conditions set forth below.

NOW THEREFORE, for good and valuable consideration, as described more fully herein, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

1. The Parties have agreed that under the Settlement Agreement Picard will covenant to pay the full 50% of all Rantz Farm, LLC expenses accrued to date and accrued hereafter until such time as Picard has paid in full his full 50% of all Rantz Farm, LLC expenses. Picard shall make payments to satisfy his obligation under this settlement as follows:

    (a) Five Hundred and 00/100 Dollars ($500.00) per month, no later than the first of each month:

    (b) Picard shall acquire a term life insurance policy for 20 years in the amount of not less than $1 million dollars, for which he will pay the monthly payments. Should the monthly payments be less than $700.00 the surplus between the monthly payment amount and $700.00 shall go to Steve Parsons together with the amount under sub-paragraph 1(a). The policy will name Steve Parsons and thereafter his estate:

    (c) All equity and net proceeds (the "Net Proceeds") remaining from the sale of the property known as 3 East Indian Street, Fenwick Island, Delaware, Sussex County Tax Map Parcel No. 1-34-23.12-181.00 ("Indian Property") after payment of the first mortgage, real estate commission and seller's share of transfer taxes, and all other customary settlement costs, when such property is sold by the lender, Picard heirs and assigns, or at Picard's sole discretion: The amount of the Picard liability secured by the mortgage and lien will be reduced by the payments made by Picard under 1a, b, and c.

(d) Until such time as the settlement amount is paid off, Picard will allow Steve Parsons to claim any losses with regard to Rantz Farm, LLC.

2. If Picard fails to make the monthly payment, or pay the life insurance policy monthly payments, or maintain the mortgage and lien in good standing on the Indian Property under sub paragraphs 1 (a), (b), and (c) above, or otherwise violates any terms or conditions of this Agreement, Picard shall be in default hereunder and Parsons shall be entitled to pursue any and all legal or equitable remedies therefore, including but not limited to (i) suing for all sums due hereunder, (ii) instituting foreclosure of the Indian River Mortgage, and (iii) pursuing any and all other legal or equitable remedies. As part of pursuing any of the foregoing remedies, Parsons shall also be entitled to recover all costs and expenses associated therewith, including but not limited to reasonable attorneys' fees.

3. As further security for the Settlement Amounts, and to secure all of Picard's obligations under this Agreement, a second mortgage in favor of Parsons and encumbering the Indian Property shall be executed and recorded in a form that has been agreed upon by all parties (the "Indian Street Mortgage"). Parsons agrees that in the event that there are no Net Proceeds (as defined above) resulting from the sale of the Indian Property, Parsons shall release the Indian Street Mortgage for no consideration. Upon Picard's fulfillment of all terms of this Agreement, including but not limited to payment in full of either the Settlement Amount or Alternative Settlement Amount, the Indian Street Mortgage shall be satisfied.

4. Within three (3) business days of the date of execution of this Agreement, the mortgage referenced in Paragraph 3 shall be recorded and, upon such recordation, the Superior Court Action shall be dismissed without prejudice.

5. Upon payment in full of either the Settlement Amount, the parties shall each execute a general release with respect to each other releasing all claims arising or relating to the Rantz Farm project and Rantz Farm, LLC.

6. Parsons, and Picard each agrees respectively, that he will cause each of his agents, insurers and representatives not to, directly or indirectly, in any capacity or manner, make, express, transmit, speak, write, verbalize or otherwise communicate in any way (or cause, further, assist, solicit, encourage, support or participate in any of the foregoing), any remark, comment, message, information, declaration, communication or other statement of any kind, whether verbal, in writing, electronically transferred or otherwise, that might reasonably be construed to be derogatory or critical of, or negative toward, the reputation, practices or conduct of Picard or Parsons or any of their respective agents, servants, employees, parent, predecessor or successor entities, affiliates, agents or representatives, or any construction project undertaken by Picard. Parsons acknowledges that this Paragraph is a material provision of this Agreement and that any breach of this Paragraph shall be a material breach of this Agreement, and that the affected Party would be irreparably harmed by violation of this provision.

7. **Indemnification:** For and in consideration of the obligations set forth herein and intending to be legally bound hereby, each Party hereto does remise, release and forever discharge every other Party hereto and its directors, officers, representatives, employees and

agents, of and from and all manner of actions, causes of actions, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims, and demands of whatsoever nature, in law, in equity or in admiralty, direct or indirect, known or unknown, matured or not matured, including for contribution and/or indemnity, of which such releasing Party has knowledge as of the Effective Date, including, without limitation, those with respect to any and all matters alleged or which could have been alleged in a Complaint regarding the Picard default under the Rantz Farm, LLC Operating Agreement in the Superior Court of Sussex County, Delaware, C.A. No. N10C-10-309 (the "Superior Court Action"), or with respect to the Operating Agreement, and any development activity for or relating to the Rantz Farm LLC Project up to and including the Effective Date. The general release hereby entered into and executed by the Parties is intended to be final, complete and total as to all matters that have arisen or occurred up to and including the Effective Date.

8. The Parties and their respective counsel hereby agree and acknowledge that the terms of this Agreement, including, but not limited to, the Settlement Amount, shall be kept confidential and shall not be disclosed to any person or entity except as necessary to enforce the terms of this Agreement, in response to a judicial order expressly compelling disclosure or as may otherwise be required by law or be necessary in a judicial proceeding, and to accountants, auditors or to the extent required by any federal or state corporate disclosure, financial reporting, security or taxation law, rule or regulation.

9. The Parties certify that this Agreement contains the entire agreement between the Parties, and that no Party is relying on any statements, promises or other representations not contained herein.

10. The Parties acknowledge that they have had the advice of counsel prior to the execution of this Agreement, that they have had sufficient time to review this Agreement, and that this Agreement shall not be construed against any Party based on a claim that it was drafted by that Party or its representatives.

11. The Parties hereby agree that if a portion of this Agreement is held to be illegal, invalid, or unenforceable, the remaining provisions of this Agreement shall remain in effect as written.

12. This Agreement is for the benefit of and shall be binding on all Parties and their respective principals, agents, servants, employees, successors, assigns, attorneys, representatives and insurers.

13. This Agreement supersedes and make null and void any other agreement, verbal or written between the Parties.

14. Each of the undersigned hereby represent and warrant that (a) the execution and delivery of this instrument by the undersigned, and the performance of its terms thereby, have been duly and validly authorized and approved by all requisite actions required by law; and (b) this

instrument constitutes a valid and binding agreement between the Parties enforceable against them in accordance with its terms.

15. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, effective as of the date first written below. For the purposes of this Agreement, facsimile signatures or copies of original signatures which are transmitted in PDF form shall be deemed to be the valid and binding signature by the Party, and the receipt of a facsimile or email copy of this Agreement by the Party shall have the same effect as the receipt of any original signature.

This Agreement has been executed and sealed on behalf of the Parties as of the date written below.

_____(Seal)      Date: 9/13/12
D. Stephen Parsons

7/13/12

_____(Seal)      Date: 9/13/12
Ralph Picard